**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Society of Apostolic Church Ministries, et al., | No. CV-21-08277-PCT-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

The United States of America ("the Government") has filed a Motion for Summary Judgment (Doc. 31) and asks the Court to find that Plaintiff Society of Apostolic Church Ministries ("SACM") is the "nominee" of Plaintiffs Elizabeth and Fredric Gardner ("the Gardners") (collectively, "Plaintiffs"). (*Id*. at 1). Plaintiffs filed a Response (Doc. 44) and the Government filed a Reply. (Doc. 45). For the following reasons, the Court grants the Government's Motion.

**I.   Background**[1]

The Gardners frequently find themselves at odds with the Government. The underlying facts of this case start about twenty-years ago, when Plaintiff Elizabeth Gardner ("Mrs. Gardner") acquired property in Apache Knolls, Arizona ("the Property") for "Bethel Aram Ministries" ("BAM") as its "corporation sole."[2] (Doc. 37-10 at 2 (Current Owner

---

[1] The background facts are undisputed, unless stated otherwise.

[2] "The IRS's tax guide for Churches and Religious Organizations notes that 'religious organizations may be legally organized in a variety of ways under state law, such as . . . corporations sole[.] The IRS has defined a 'corporation sole' as 'a corporate form authorized under certain state laws to enable bona fide religious leaders to hold property and conduct business for the benefit of the religious entity.'" *Gardner v. Comm'r of*

Search Report)). The Property was later conveyed to SACM, a religious entity for which Mrs. Gardner is also its corporation sole as well as the Bishop. (*Id*; Doc. 37-9 at 11 (Mrs. Gardner's Deposition)). SACM now owns the Property and operates a church there: Messiah's Remnant. (*Id.*); (*see also* Doc. 44-2 at ¶ 5 (Mrs. Gardner's Affidavit)). The Gardners reside in a Parsonage[3] at the property. (Doc. 37-9 at 39 (Mr. Gardner's Deposition)). The Gardners previously took Vows of Poverty declaring their intent to divest themselves from earnings or wages from the church as BAM would provide for their needs as pastors and they transferred all of their assets to BAM, their previously owned corporation sole.[4] (*Id.* at 28). SACM pays most of the Gardners' bills and expenses. (*Id.*) SACM's sources of income include a yearly society membership fee paid by "fellow pastors" and donations mostly paid through a Square account. (*Id.* at 12–13). These fellow pastors pay a fee to SACM and, in return, SACM and the Gardners "make sure" their corporation sole registrations are current with the State of Montana. (*Id.*)

In a previous tax controversy, the Ninth Circuit affirmed the Tax Court's finding that the Gardners' corporation sole did not have any congregation and therefore the donations that BAM received were taxable income. *Gardner v. Comm'r of Internal Revenue*, 845 F.3d 971, 973 (9th Cir. 2017). Specifically, the Tax Court found that the Gardners had unreported income of $100,070 for 2002; $217,973 for 2003; and $235,542 for 2004 and that they should have included these amounts in gross income. *Gardner v. Comm'r*, 105 T.C.M. (CCH) 1433, at *1 n.1 (T.C. 2013). The Tax Court also noted that the Gardners are liable for self-employment tax because they did not submit IRS Form

---

*Internal Revenue*, 845 F.3d 971, 973 n.1 (9th Cir. 2017).

[3] The federal "parsonage exemption" provides an exemption for "minister[s] of the gospel" and states that gross income does not include: "(1) the rental value of a home furnished to him as part of his compensation; or (2) the rental allowance paid to him as part of his compensation." 26 U.S.C. § 107 (1–2).

[4] Prior to this action, another Court within this district enjoined the Gardners individually and doing business as "any entity" from "[o]rganizing, promoting, marketing, or selling corporations sole or any tax shelter, plan or arrangement, that advises, assists, or encourages taxpayers to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities." *United States v. Gardner*, 2008 WL 906696, at *6 (D. Ariz. Mar. 21, 2008), *aff'd*, 457 F. App'x 611 (9th Cir. 2011).

4361: "the Application for Exemption From Self–Employment Tax for Use by Ministers, Members of Religious Orders and Christian Science Practitioners" for the 2002–2004 tax years. *Id*. at *8.

In 2021, the Internal Revenue Service ("IRS") levied $73,340.37 from a bank account owned by SACM ("the Levy") to satisfy tax obligations owed by the Gardners related to unpaid tax liability from the 2002–2004 tax years. (Docs. 25 at ¶ 18 (Amended Complaint); 27 at ¶ 18 (Answer)). The Government states that the Gardners owe delinquent taxes and penalties of $826,381.05 for tax years 2002, 2003 and 2004. (Docs. 37-2 at 1, 37-3 at 1 and 37-4 at 1).[5] As it was in their previous matter, the Gardners have not filed Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code, with the IRS. *Gardner*, 105 T.C.M. (CCH) 1433, at *1, n. 1.

As a result of this Levy, Plaintiffs filed suit against the Government asserting claims to quiet title and for wrongful levy. (Doc. 1 at 4–5 (Complaint); Doc. 25 at 4–5 (Amended Complaint)). The Government now seeks summary judgment on Plaintiffs' wrongful levy claims. (Doc. 37 at 1).

**II.   Discussion**

In its Motion for Summary Judgment, the Government argues that SACM is holding property for the Gardners as their "nominee" and therefore the IRS' Levy on SACM's bank account was proper. (Doc. 37 at 13). The Court will first set forth the applicable legal standard before determining whether SACM is the Gardner's nominee.

**A.   Legal Standard**

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material"

---

[5] The Gardners owe $66,753.57 in tax liability and $17,270.20 in accrued interest for the 2002 tax year; $167,141.72 in tax and $11,564.18 in interest for the 2003 tax year; and $170,596.51 in tax and $11,803.23 in interest for the 2004 tax year as of March 2023. (Docs. 37-2 at 1, 37-3 at 1 and 37-4 at 1). This amount owed equals $445,129.41—far short of the amount the Government argues the Gardners owe. (Doc. 37 at 1).

- 3 -

if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Id.* Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323). If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

**B.     Nominee Status**

The Government argues that SACM is holding title to the Apache Knolls Property as the Gardners' nominee. (Doc. 37 at 14). Plaintiffs argue that the Property belongs to SACM, and so use of the nominee theory violates Plaintiffs' rights guaranteed by the First

Amendment, presumably the Free Exercise Clause.[6] (Doc. 44 at 8). The Court agrees with the Government.

### 1. The *Towe* Factors

The IRS has broad powers to impose federal tax liens under 26 U.S.C. § 6321. Section 6321 provides that a lien may be imposed "upon all property and rights to property . . . belonging to" a taxpayer who has failed to pay taxes owed after assessment and demand. Section 6321 applies to all property of a taxpayer, including property that is held by a third party as the taxpayer's nominee or alter ego. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977). "A nominee is one who holds bare legal title to property for the benefit of another." *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013) (citing *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir.2001)). The application of the federal tax lien statutes involves questions of both state and federal law. *See Drye v. United States*, 528 U.S. 49, 58 (1999). In making nominee determinations in a tax lien context, courts must "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach[.]" *Id*. After determining that the taxpayer has a property interest under state law, a district court must "then [look] to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id*. "[Q]uestions of nominee status require a 'fact-specific state-law inquiry' prior to determining whether a nominee lien may lawfully be enforced as a matter of federal law." *Fourth Inv. LP*, 720 F.3d at 1068 (internal citations omitted).

Both parties cite primarily to out of state case law, likely because "no Arizona state court has expressly approved of the nominee theory." *TBS Properties LLC v. United States*, 2022 WL 783040, at *10 (D. Ariz. Mar. 15, 2022). Indeed, Arizona does not have a statute that recognizes corporations sole like Nevada does—the state where Mrs. Garner incorporated BAM. (Doc. 44 at 11 (citing NV Rev Stat 84.050)). Notwithstanding this

---

[6] Plaintiffs do not cite any authority to support this argument and the Court declines to do Plaintiffs work for them. *See United States v. Hatcher*, 656 F. Supp. 3d 1233, 1236 (D. Nev. 2023) (noting that district courts do not need not address undeveloped arguments) (citing *Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013)).

- 5 -

lack of statutory authority, "nominee liability is potentially available" in Arizona. *Id*. at *11. For example, other courts within this district utilize the factors set forth in *Towe Antique Ford v. IRS*, 791 F.Supp. 1450, 1454 (D. Mon. 1992) to determine nominee status. *See e.g.*, *United States v. Bigley*, 2017 WL 2417911, at *7 (D. Ariz. May 10, 2017) (citations omitted); *United States v. Secapure*, 2008 WL 820719, at *7 (N.D. Cal. Mar. 26, 2008) (noting that courts throughout the Ninth Circuit rely on the *Towe* factors to determine nominee status). The Court will follow suit and consider the *Towe* factors to determine whether SACM is holding title to the Apache Knolls Property as the Gardners' nominee.

*Towe* sets forth the following factors for consideration:

(1) Whether the nominee paid no or inadequate consideration;

(2) Whether the property was placed in the name of the nominee in anticipation of litigation or liabilities;

(3) Whether there is a close relationship between the transferor and the nominee;

(4) Whether the parties to the transfer failed to record the conveyance;

(5) Whether the transferor retained possession; and

(6) Whether the transferor continues to enjoy the benefits of the transferred property.

791 F.Supp. at 1454. Some districts within this circuit have added additional factors to this list as well. *See The Colby B. Found. v. United States*, 1997 WL 1046002, at *20 (D. Or. Oct. 22, 1997) (discussing the use of additional factors). However, the Ninth Circuit instructs that "the overarching consideration is whether the taxpayer exercised active or substantial control over the property." *Fourth Inv. LP*, 720 F.3d at 1070.

**2. SACM is the Gardners' Nominee**

Here, the *Towe* factors establish that SACM is the Gardner's nominee. The "deed chain" for the Property shows that Mrs. Gardner has consistently transferred the property in and out of entities for which she is the corporation sole for no consideration. (Doc. 37-10 at 2). In 2003, Mrs. Gardner acquired the Property from its previous owners as

corporation sole of BAM. (*Id.*) It then was transferred directly to Mrs. Gardner by BAM, then to Mrs. Gardner as corporation sole of Messiah House Fellowship, then to Mrs. Gardner as corporation sole of "church restoration ministries," and now, finally, to Bishop Gardner as corporation sole of SACM. (*Id.*) The deed chain certainly lends credence to the Government's argument that "[d]espite the many name changes, the church has functioned the same since its initial inception, and all iterations have been governed by Elizabeth Gardner as a corporation sole." (Doc. 37 at 4). This evidence shows that the first and fifth *Towe* factors weigh towards a finding that SACM is the Gardners' nominee.

Furthermore, Mrs. Gardner has had a very close relationship with each entity the Property was transferred to as she was the corporation sole for each entity, and the Gardners essentially retained possession and control over the property after each transfer. (Doc. 37-10 at 2). The Gardners have also enjoyed the benefits of the property after each transfer as they live at the Property and SACM pays their bills and expenses. (Doc. 37-9 at 28, 43). The Gardners have also paid legal fees from SACM's checking account due to the IRS' garnishment of Mrs. Gardner's social security payments. (*Id.* at 32–33). This evidence shows that the third and sixth *Towe* factors also weigh towards nominee status, therefore, the *Towe* factors as a whole weigh heavily in the Government's favor.

Finally, the "overarching consideration" is whether the Gardners exercised active or substantial control over the property—which they have. *Fourth Inv. LP*, 720 F.3d at 1070. Thus, the Court finds that SACM is the Gardners' nominee as a matter of law. *See Soremekun*, 509 F.3d at 984. As the Ninth Circuit stated previously: "This seems a little like arguing that Clark Kent is not Superman. Certainly Superman displays abilities that Clark Kent denies having, but they are one in the same." *Gardner*, 845 F.3d at 976.

### C. The Levy was Proper

Because the Court finds that SACM is the Gardners' nominee, the Court must also find that the Levy of $73,340.37 from a bank account owned by SACM was lawful. *See Colby B.*, 1997 WL 1046002, at 21 (noting that the IRS is "authorized to levy upon property belonging to a taxpayer that is possessed or nominally held by a taxpayer's nominee, alter-

ego, or transferee.") (internal citations omitted).  Indeed, Section 6321 applies to all property of a taxpayer, including property that is held by a third party as the taxpayer's nominee.  *G.M. Leasing Corp.*, 429 U.S. at 350–51.

Accordingly,

**IT IS HEREBY ORDERED** that the Government's Motion for Summary Judgment (Doc. 37) is **GRANTED**.  There being no just reason for delay, the Clerk of Court is kindly directed to enter judgment under Federal Rule of Civil Procedure 54(b) in the Government's favor on Plaintiff's wrongful levy claim.

**IT IS FURTHER ORDERED** that in light of Plaintiffs' remaining claim for quiet title, the parties are directed to comply with Paragraph 9 of the Rule 16 Scheduling Order (Doc. 29 at 5) regarding notice of readiness for pretrial conference.  Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

Dated this 22nd day of February, 2024.

Honorable Diane J. Humetewa
United States District Judge